ORDERED in the Southern District of Florida on March 19, 2010



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

Bankruptcy Case No.: 02-11913-BKC-AJC

In Re:                                    Chapter 11

PSN USA, Inc.,

    Debtor,
_____/

NOB HOLDINGS CORP., in its own name    **Adversary Number:** 09-02189-AJC
and in the name of THE
UNITED STATES OF AMERICA,

    Plaintiffs,

vs.

LIBERTY MUTUAL INSURANCE
COMPANY, as the surety of the
PSN Liquidating Trustee, Dan Fair,

    Defendant.
_____/

## MEMORANDUM DECISION GRANTING LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT AGAINST NOB HOLDINGS CORP.

THIS MATTER came before the Court for hearing on March 4, 2010 on Liberty Mutual

16489331.1

Insurance Company's motion for final summary judgment on NOB Holding Corp.'s adversary complaint (*D.E. 19*)[1] pursuant to Bankruptcy Rule 7056.

The Court, having considered the Motion and the Affidavit of Dan Fair attached thereto, the filings in the Chapter 11 proceeding, and the arguments of counsel at the hearing, and otherwise being fully advised in the premises, makes the following conclusions of law in accordance with Bankruptcy Rule 7056.

I.     BACKGROUND

The Debtor filed a Voluntary Petition under Chapter 11 on March 1, 2002 (D.E.1) and filed its Plan of Reorganization on October 15, 2002. (D.E. 328) NOB submitted unsecured claim #77 and an objection to the claim was filed by the Debtor on November 20, 2002. (D.E. 359) PSN filed its First Amended Plan of Reorganization on November 21, 2002. (D.E. 363) The Amended Plan was confirmed on December 24, 2002 (the "Amended Plan"). (D.E. 446) Daniel Fair ("Fair") was appointed as the Liquidating Trustee by section I. RR of the Amended Plan. On or about January 6, 2003, a Liquidating Trust Agreement was signed. (D.E. 392)

Liberty issued a Bond of Liquidating Trustee on January 8, 2003 to the United States Bankruptcy Court "for the faithful performance by the undersigned principal [Daniel A. Fair] of his official duties as the Liquidating Trustee of the above named Debtor" (the "Bond"). Section 5.4 of the Liquidating Trust Agreement states "the Liquidating Trustee shall not be liable for any error of business judgment with respect to any action taken or omitted to be taken by the Liquidating Trustee in such capacity, <u>unless it shall be proven that the Liquidating Trustee shall have been grossly negligent or shall have acted with willful misconduct or fraud</u> in ascertaining

---

[1] D.E. references in italics are from this adversary case. All other D.E. references are from the 02-11913 Chapter 11 action.

16489331.1                                                      2

the pertinent facts or in performing any of the rights, powers or duties hereunder." Section 4.06 of the Amended Plan similarly limits Fair's liability to acts of gross negligence or willful misconduct. Section 5.5(b) of the Liquidating Trust Agreement further states that "the Liquidating Trustee may consult with independent legal counsel to be selected by him, and the Liquidating Trustee <u>shall not be liable for any action taken or omitted to be taken by him in accordance with the advice of such counsel</u>…"

According to his Affidavit, Fair obtained a B.S. degree in Accounting in 1982 from Carroll College but is not a licensed CPA. He was an employee of the Debtor in its accounting department but had no experience serving as a liquidating trustee and was not familiar with bankruptcy practice or procedure. Fair filed an application to employ Kluger Peretz Kaplan & Berlin ("KPKB") as the Trustee's counsel on February 24, 2003. (D.E. 504) KPKB had formerly served as counsel to the Official Committee of General Unsecured Creditors. According to Fair's affidavit, Fair did not believe he had any choice in the selection of counsel. (Fair Aff. ¶ 11.)

At the request of KPKB, Fair signed an affidavit supporting an objection that had been made by the Debtor to NOB's claim on November 30, 2004. The basis for the objection was that NOB's claim arose from a written contract entered into by the Debtor's parent company, Pan American Sports Network International ("PSNI"), rather than by the Debtor. Fair attested to the fact that the Debtor operated out of Florida and was not "domiciled" in New York. According to Fair, the contract between NOB and the Debtor did not clearly distinguish between the Debtor or PSNI but it referred to an entity domiciled in New York. Fair found documentation after signing his affidavit in November 2004 and before the hearing on the objection to NOB's claim indicating that the Debtor had conducted some business in New York, so he withdrew his

affidavit before the hearing date. A hearing was still conducted on the objection to NOB's claim on April 19, 2005 based upon proofs other than Fair's affidavit. The Court entered a 26 page Findings of Fact and Conclusions of Law on October 31, 2005 (D.E. 753) finding that the Debtor was domiciled in New York and, therefore, denied the objection to NOB's claim (D.E. 752 and 753). NOB's motion for fees and/or sanctions against Fair for asserting an improper objection to its claim were denied by the Court as being without merit (D.E. 985).

NOB filed a motion on April 29, 2006 (D.E. 834) and an amended motion on April 30, 2006 (D.E. 842) to remove Fair as the Liquidating Trustee. Evidentiary hearings on the motion were conducted on February 16 and March 30, 2007.

The Court appointed an examiner, Soneet Kapila, on April 13, 2007. (D.E. 1026) The Examiner submitted his report to the Court on June 22, 2007 (the "Report"). (D.E. 1044) The Report indicated that "the trustee violated numerous plan provisions, the trustee violated the reserve account prescribed by the plan provisions, the trustee commingled funds and did not segregate the required reserves, the trustee paid estate professionals without the requisite court approvals pursuant to the plan, the trustee did not exercise its fiduciary obligation to maximize the return on available surplus funds as he did not hold the funds in interest bearing account."

Significantly, however, the examiner also found that "the trustee did not possess the background experience and foundational qualifications required to serve in the fiduciary role of a liquidating trustee... bankruptcy counsel evidently did not provide the requisite level of overseeing advice and guidance... and there is no evidence of misappropriation of funds."

On June 8, 2007 the Court entered partial findings of fact and conclusions of law (D.E. 1041). The Court found that the Liquidating Trustee had mismanaged the PSN liquidating trust. Nevertheless, the Court determined that it was in the best interest of the creditors and the

administration of the estate not to remove Fair as the Liquidating Trustee but simply to order him not to make any further disbursements.

NOB subsequently filed a motion to disgorge improperly paid fees on July 20, 2006. (D.E. 925) On May 27, 2008 the Court ordered a disgorgement of fees that Fair paid to KPKB without court approval. (D.E. 1156) KPKB had voluntary disgorged $324,000 in August 2007 so the order directed KPKB to disgorge a remaining shortfall of $165,691. The Court did not order Fair disgorge any of the fees that he had been paid.

NOB filed an adversary complaint against Fair and KPKB on September 22, 2008. (D.E. 1197) NOB later filed an adversary complaint against Liberty on October 16, 2009. (*D.E. 1*) The Complaint alleges causes of action against Liberty for (i) Liability of a Surety; and (ii) Attorneys' Fees under Florida Statutes § 627.428. NOB voluntarily dismissed its claim against KPKB on January 15, 2010. The two adversary actions were consolidated on January 21, 2010 (*D.E. 23*)

Liberty filed a motion for summary judgment on NOB's complaint on January 15, 2010 (*D.E. 19*). NOB did not respond to the motion. A hearing on Liberty's motion for summary judgment was conducted on March 4, 2010. NOB filed its own motion for partial summary judgment just prior to the hearing on March 4 (*D.E. 28*). NOB filed a motion for enlargement of time to file a response to Liberty's motion for summary judgment after the hearing on March 5, 2010 (D.E. 31). The Court denied this latter motion on March 15, 2010 (*D.E. 38*).

NOB states that it entered into a new retainer agreement with its counsel in March 2005 as a result of Fair's submission of a false affidavit and that NOB paid substantially more fees under the new retainer agreement than NOB would have paid under the original retainer agreement (*D.E. 30*). This evidence of alleged damage sustained by NOB was not presented as a

response to Liberty's Motion for Summary Judgment, however.

II.    ANALYSIS

    A.    Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, as made applicable to bankruptcy adversary proceedings by Bankruptcy Rule (B.R.) 7056, a party seeking to recover upon a claim may move for summary judgment in its favor as to all or any part of a claim. Summary judgment should be granted if the matters of record show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In re Diagnostic Instrument Group, 283 B.R. 87, 92 (Bankr. M.D. Fla. 2002). The Court concludes that there are no genuine issues as to any material fact. Consequently, this matter is ripe for summary judgment resolution.

    B.    Procedural Issues

Liberty claims it is entitled to summary judgment on procedural grounds because NOB failed to comply with the Federal Rules of Civil Procedure and the U.S. Bankruptcy Court—Southern District of Florida Local Rules. NOB did not file any responsive pleading to Liberty's Motion for Final Summary Judgment.

Liberty argues that, based on Fed. R. Civ. P 56(e)(2), NOB's failure to timely file any response is a basis for this Court to grant Liberty's Motion for Final Summary Judgment. See Kelson v. S. Bell Tel. & Tel. Co., 778 F.Supp 521, 523 (S.D. Fla. 1991) (holding that the court had the discretion to grant the summary judgment motion based on the fact that it was unopposed by plaintiff during the time allowed by the Rules of Civil Procedure).

Further, NOB failed to comply with the time limits set forth in Local Rule 5005(F)(1), as well. The Rule specifically states that papers that are not submitted timely by 4:30 p.m. on the

second business day prior to the date of the hearing are <u>not</u> to be considered.[2] Nevertheless, the Court considered the untimely filed papers submitted by NOB.

For reasons cited below, Liberty is also entitled to a final summary judgment for substantive reasons.

C. <u>Simple Negligence v. Gross Negligence, Willful Misconduct or Fraud</u>

Count One of NOB's Complaint against Liberty alleges a cause of action for "Liability of a Surety." Count One alleges as follows:

> Mr. Fair is liable to NOB for damages caused by his Misconduct, including but not limited to (i) decreased distributions from the Trust; (ii) delays in receiving distributions from the Trust; and (iii) damages for contempt of court, bad faith submission of a false affidavit, bad faith litigation and concealment of misconduct, including reasonable attorneys fees arising from NOB's legal work necessary to expose and correct Mr. Fair's Misconduct. (Compl. ¶ 24.)

As a matter of law, Liberty, as surety, cannot be liable under its Bond unless Fair is also liable to NOB. <u>Arson v. Ahringer</u>, 322 So.2d 643 (Fla. 3d DCA 1975)

As a general rule, bankruptcy trustees are entitled to qualified judicial immunity for acts taken within their authority as an officer of the court. <u>In re Clearwater Bay Marine Serv.</u>, 236 B.R. 285, 287 (Bankr. M.D. Fla. 1999). It is well settled that in order for a trustee to be held personally liable, the actions of the trustee must rise to the level of willful and deliberate conduct or gross negligence. <u>In re Solar Fin. Servs.</u>, 255 B.R. 801, 804 (Bankr. S.D. Fla. 2000). This is particularly true when the Amended Plan and the Liquidating Trust Agreement also specifically limit Fair's liability to acts of gross negligence or willful misconduct.

In order for Fair's conduct to be considered grossly negligent, NOB must establish that Fair "willfully and deliberately" attempted to cause harm to NOB. <u>Id.</u> There has been no proof

---

[2] The Court has addressed NOB's Motion to Allow Late Filing of Summary Judgment Opposition in a separate order (*D.E. 38*).

adduced by NOB that Fair acted deliberately or with the intent to harm NOB or the Estate through his decisions as the Liquidating Trustee. NOB has generally argued that Fair "abdicated" his responsibilities, but this is insufficient. Fair admitted in his Affidavit that he violated the Liquidating Trust Agreement and/or the Amended Plan in several respects but these violations were caused by inattention to detail, misinterpretation of the Amended Plan, simple mistake, or based on advice of counsel. (Fair Aff. ¶ 20 and 24) Fair received no financial benefit (other than some minimal extended fees as the trustee) as a result of these errors. It is also a general rule that a bankruptcy trustee is not liable in any manner for mistakes in judgment where discretion is allowed. In re Serve-em.com, Inc., 2007 WL 3054987, 5 (Bankr. S.D. Fla. October 16, 2007).

Florida law defines "gross" negligence as "an act or omission that a reasonable, prudent person would know is likely to result in injury to another." *Eller v. Shova*, 630 So.2 537, 540 n. 3 (Fla. 1994). As stated in *Tran v. Waste Management, Inc.*, 290 F.Supp.2d 1286, 1294 (M.D. Fla. 2003), a showing of gross negligence under Florida law requires the following elements:

> a. Gross negligence presupposes the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than normal and … usual … peril;
>
> b. Secondly, gross negligence must be predicated on a showing of chargeable knowledge or awareness of the imminent danger spoken of; [a]nd
>
> c. [T]he act of omission complained of must occur in a manner which evinces a conscious disregard of consequences, as distinguished from a careless disregard thereof (as in simple negligence) or from the more extreme willful or wanton disregard thereof (as in culpable or criminal negligence).

Focusing on subpart (c), which appears most applicable here, it appears that Fair may have shown a careless disregard for his duties but not a conscious disregard of the consequences.

NOB's Complaint states that Fair "commingled funds that the Plan required to be

16489331.1  8

deposited and preserved in a special 'Reserve Account' with other Trust Assets" and "failed to deposit Trust funds in interest bearing accounts as required by the Plan." (Compl. ¶ 15(C), (H).) According to Fair's affidavit, Fair opened an Operating Account and a Reserve Account with Bank of America. (Fair Aff. ¶ 13.) Fair did not keep the required reserves segregated as required by the Amended Plan but used the reserves from time to time to pay operating costs. (Fair Aff. ¶ 13.) Although these acts may constitute a violation of the Amended Plan, this was not a deliberate attempt or conscious disregard by Fair to injure NOB or the Estate. (Fair Aff. ¶ 24.)

Fair further failed to put the reserve funds into an interest bearing account as required by the Amended Plan. (Fair Aff. ¶ 14.) A representative of the Bank of America advised Fair that that the funds could not be put into such an interest bearing account and Fair stupidly but not maliciously relied upon her advice. (Fair Aff. ¶ 14.) Although Fair may have been mistaken in his belief, there was no deliberate attempt to wrongfully diminish or divert assets of the Estate. (Fair Aff. ¶ 24.) Fair did not receive any financial benefit (other than some minimal extended fees as the trustee) as a result of his actions as the Liquidating Trustee. (Fair Aff. ¶ 23.) Fair admittedly misread or did not fully understand the requirements of the Plan. (Fair Aff. ¶ 20.) As such, any violations on his part were inadvertent and/or were based upon advice of counsel. (Fair Aff. ¶ 20.) Stupidity does not equal malice.

With respect to NOB's assertion that Fair "submitted in bad faith a false affidavit in opposition to NOB's motion for summary judgment on the Trustee's objection to NOB's claim", Fair signed the affidavit supporting the objection at the request of counsel (Fair Aff. ¶ 17). Upon discovering new information that contradicted allegations in his affidavit, Fair withdrew the affidavit prior to the April 2005 hearing on the objection. (Fair Aff. ¶ 18.) Fair's actions were

not only based upon advice of counsel but he acted in good faith when new information was disclosed to him. NOB's motion for fees and/or sanctions against Fair for asserting an improper objection to NOB's claim were denied by the Court as being without merit. (D.E. 985) Fair's sole motivation in objecting to NOB's claim was to assure that only legitimate creditors were paid.[3]  (Fair Aff. ¶ 20.)

### D. Reliance on Advice of Counsel

It has also been established that a trustee's reliance on advice of counsel can be used as a defense to claims of willful misconduct. In re Southeast Banking Corp., 314 B.R. 244 (Bankr. S.D. Fla. 2004); Athanason v. Hubbard, 218 So. 2d 475, 478 (Fla. 2d DCA 1969) (holding that a receiver is not liable for loss resulting from his good faith reliance on the advice of counsel). Here, the Liquidating Trust Agreement explicitly provides that Fair will not be held liable for actions taken by him based upon advice of counsel.

> Section 5.5(b) of the Liquidating Trust Agreement provides as follows:
> "the Liquidating Trustee may consult with independent legal counsel to be selected by him, and the Liquidating Trustee shall not be liable for any action taken or omitted to be taken by him in accordance with the advice of such counsel..."

Fair relied upon advice from KPKB in pursuing his duties as the Liquidating Trustee. (Fair Aff. ¶ 12.) NOB's Complaint states that Fair failed to comply with the compensation provisions of the Amended Plan by paying fees and expenses to himself and to his counsel without court approval. At KPKB's request, Fair paid several of KPKB's invoices. (Fair Aff. ¶ 15.) Fair was advised by counsel that monthly invoices could be paid without court approval as long as quarterly invoices were submitted to the court. (Fair Aff. ¶ 15.) It was Fair's

---

[3] Regardless of the Court's ruling on the objection to NOB's claim, Fair still believes that PSN's business was primarily conducted in Miami rather than New York. (Fair Aff. ¶ 19.) Fair cannot be held liable for a mistake in judgment where that judgment was discretionary and reasonable under the circumstances. See In re Serve-em.com, 2007 WL *5.

understanding that the bills had been approved for payment by the court and therefore, Fair was permitted to pay them. (Fair Aff. ¶ 15.) Fair reviewed the Amended Plan (Fair Aff. ¶ 12) and believed that it allowed him to pay 80% of attorneys fees and 100% of legal costs without court approval (Fair Aff. ¶ 15). Fair also believed that the same rules applied to payment of his fees as trustee. (Fair Aff. ¶ 15.)

The Report submitted by the Examiner concluded that Fair "did not possess the background experience and foundational qualifications required to serve in the fiduciary role of a liquidating trustee," but that there was "no evidence of misappropriation of funds" (D.E. 1044). This is not a situation where a trustee has misappropriated or embezzled funds for his own pecuniary gain. Simply stated, any of Fair's actions that are complained of by NOB were mistakes in judgment due to his inexperience and/or instances where he relied upon advice of counsel.

E.  Damages

It is a basic legal precept that to recover damages in law, a plaintiff must demonstrate that damages have been sustained. Bell v. Allstate Ins. Co., No. 02-6789, 2003 WL 21246394, 2 (Fla. Cir. Ct. Mar. 4, 2003); Heard v. Mathis, 344 So. 2d 651, 655 (Fla. 1st DCA 1977) (holding that the essential elements of any cause of action are the existence of a legal right in plaintiff, with a corresponding duty in defendant, coupled with a violation of that duty *which results in injury or damages to the plaintiff*).

Count I of NOB's Complaint seeks damages against Liberty caused by Fair's "Misconduct." Liberty's bond was issued for the benefit of "the United States Bankruptcy Court, Southern District of Florida, Miami Division." NOB is not named as an obligee in the bond and, therefore, does not have standing to make a claim against Liberty for any damages.

NOB was not requested by the Court to file an adversary complaint against Liberty and the complaint was not filed on behalf of the Estate. The Estate has not claimed any loss as a result of Dan Fair's actions. NOB has not made an application for its attorneys' fees and costs (its only possible damages) under 11 U.S.C. § 503(b)(3)(D) and (4). These provisions are NOB's only potential source of recovery for attorneys' fees and costs. These provisions provide for an award of administrative expenses <u>from the estate</u> based upon a showing that a creditor made a "substantial contribution in the Debtor's Chapter 11 case." <u>In re L. Frank Johnson,</u> 126 B.R. 808, 810 (Bankr. M.D. Fla. 1991).

In any event, Liberty has alleged that NOB has been fully reimbursed for any violations by Fair of the Amended Plan and/or the Liquidating Trust Agreement.[4] NOB did not timely file an opposing affidavit establishing its damages and there is nothing in the record indicating that any damages have been sustained by NOB. The Court considered the Declaration of Edward Griffith (D.E. 30), filed in conjunction with NOB's motion for partial summary judgment (D.E. 28), and the only damages that NOB claims are the additional, renegotiated attorneys' fees incurred by NOB that resulted from the prosecution of its claim and responding to the objection to that claim. But in order for the additional fees to be chargeable to Liberty, the Court would have to conclude that Fair pursued the Debtor's objection to NOB's claim in a grossly negligent, willful or fraudulent way. The Court does not reach that conclusion.

---

[4] KPKB disgorged $489,691 to the Estate so the Estate actually saved money by not paying legal expenses. All distributions that were required under the Amended Plan were made to creditors, including NOB. As a result, any financial harm to the Estate or any damages incurred by NOB due to Fair's mistakes in paying estate professionals without court authorization were fully remedied.

F. <u>Attorneys Fees</u>

Count Two of NOB's Complaint alleges a cause of action against Liberty for "Attorneys' Fees under Florida Statutes § 627.428." Specifically, Count Two of the Complaint states the following:

> Upon rendition of a judgment against Liberty Mutual under Count One, Florida Statutes § 627.428 entitles NOB to an award of reasonable attorneys fees in obtaining such a judgment against Liberty Mutual, including reasonable attorneys fees arising from prosecuting this adversary proceeding <u>as well as the Fair Proceeding</u>.

(Compl. ¶ 26.) Florida Statute section 627.428, entitled "Attorney's fee" states as follows:

> (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Florida Statute section 627.428, which provides for an award of reasonable attorneys' fees upon obtaining a judgment, is inapplicable to any attorneys fees or costs incurred by NOB or its lawyers before October 16, 2009 when the adversary complaint against Liberty was filed. Even if a judgment was entered in favor of NOB under Count I of the Complaint, section 627.428 would only entitle NOB to the costs incurred in connection with the adversary complaint filed against Liberty. Section 627.428 does not entitle NOB to its fees and costs incurred before the filing of the adversary complaint against Liberty, especially fees incurred after renegotiating a contingency fee contract with its counsel in 2005. The statute does not apply to fees generally incurred in the Fair proceeding. Liberty is not liable to NOB for fees incurred in presenting its claim or pursuing relief against Dan Fair or Kluger Peretz

Therefore, NOB has no basis for the recovery of its attorneys' fees sought in Count II of the Complaint as a matter of law and the attorneys fees incurred by NOB cannot be considered a damage to NOB.

## CONCLUSION

For all of the foregoing reasons, the Court grants final summary judgment in favor of Liberty Mutual Insurance Company.

# # #

Submitted by,

Bruce Charles King
CARLTON FIELDS, P.A.
*Counsel for Liberty Mutual Insurance*
100 Southeast Second Street, Suite 4000
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
Email: bking@carltonfields.com
Florida Bar Number 287491